UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

MELISSA C. o/b/o M.C.,

                              Plaintiff,

                v.

KILOLO KIJAKAZI,
Acting Commissioner of Social Security,

                           Defendant.
_____

<u>DECISION AND ORDER</u>

20-CV-0885L

Plaintiff, on behalf of her minor son, M.C. ("claimant"), appeals from a denial of supplemental security income benefits by the Commissioner of Social Security ("the Commissioner"), based on the Commissioner's finding that M.C. was not disabled.

Plaintiff protectively filed an application for Supplemental Security Income on February 16, 2017, on M.C.'s behalf, claiming disability as of February 7, 2016. That claim was initially denied on May 1, 2017. Plaintiff requested a hearing, which was held on May 6, 2019 before Administrative Law Judge ("ALJ") Dale Black-Pennington. (Dkt. #10 at 10). On May 30, 2019, the ALJ issued a decision concluding that M.C. was not disabled. (Dkt. #10 at 11-24). That decision became the final decision of the Commissioner when the Appeals Council denied review on May 15, 2020. (Dkt. #10 at 1-3). Plaintiff now appeals.

Plaintiff has moved (Dkt. #12) and the Commissioner has cross moved (Dkt. #13) for judgment on the pleadings pursuant to Fed. R. Civ. Proc. 12(c). For the reasons that follow, I find

that the Commissioner's decision was not supported by substantial evidence, and was the product of legal error, and that remand for further proceedings is warranted.

## DISCUSSION

### I.   Relevant Standards

Because M.C. is a child, a particularized, three-step sequential analysis is used to determine whether he is disabled. First, the ALJ must determine whether the claimant is engaged in substantial gainful activity. *See* 20 CFR §416.924. If so, the claimant is not disabled. If not, the ALJ proceeds to step two, and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act. If not, the analysis concludes with a finding of "not disabled." If so, the ALJ continues to step three.

At step three, the ALJ examines whether the claimant's impairment meets or equals the criteria of a listed impairment. If the impairment meets or medically equals the criteria of a listing and meets the durational requirement (20 CFR §416.924) – that is, if the child's impairments are functionally equivalent in severity to those contained in a listed impairment – the claimant is disabled. If not, he is not disabled. In making this assessment, the ALJ must measure the child's limitations in six domains: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for oneself; and (6) health and physical well-being. Medically determinable impairments will be found to equal a listed impairment where they result in "marked" limitations in at least two domains of functioning, or an "extreme" limitation in at least one. 20 CFR §§416.926a.

The Commissioner's decision that M.C. is not disabled must be affirmed if it is supported by substantial evidence, and if the ALJ applied the correct legal standards. *See* 42 U.S.C. §405(g); *Machadio v. Apfel*, 276 F.3d 103, 108 (2d Cir.2002).

## II.     The ALJ's Decision

The ALJ initially found that since the February 16, 2017 application date, M.C. (5 years old at the time of the application) has had the severe impairments of attention deficit hyperactivity disorder ("ADHD") and impulse control disorder. (Dkt. #10 at 13). The ALJ proceeded to analyze whether M.C. has any "marked" or "extreme" limitations in any of the six domains of functioning. Based on the medical, educational and testimonial evidence presented, the ALJ concluded that during the relevant period, M.C. had a less than marked limitation in acquiring and using information, a less than marked limitation in attending and completing tasks, a less than marked limitation in interacting and relating with others, a less than marked limitation in moving about and manipulating objects, a less than marked limitation in caring for himself, and no limitation in health and physical well-being. The ALJ accordingly concluded that M.C. is "not disabled." (Dkt. #10 at 18-24).

## III.    The ALJ's Analysis

Plaintiff argues that the ALJ mischaracterized the record, by generally describing M.C.'s functioning – particularly in the domains of acquiring and using information, social interaction, and attending to tasks – as having improved with medication,[1] and that the ALJ failed to properly address M.C.'s abilities in light of his highly supportive educational setting.

The Court concurs. "Under the Social Security Rulings, a child who 'needs a person[], treatment, device, or structured, supportive setting to make his functioning possible or improve the functioning . . . has a limitation, even if he is functioning well with the help or support.'" *Martin v. Kijakazi*, U.S. Dist. LEXIS 240990 at *15-*16 (E.D. Pa. 2021)(quoting *Brown v. Colvin*, 193

---

[1] Plaintiff does not explicitly argue that the ALJ erred in his analysis of the domains of moving and manipulating objects, caring for himself, or health and physical well-being. Indeed, none of M.C.'s teachers suggested any appreciable issues in these domains, and I find no error in the ALJ's finding that M.C.'s limitations in these domains were "none" or "less than marked."

F. Supp. 3d 460, 466 (E.D. Pa. 2016)). Because a supportive setting "may minimize signs and symptoms of [the claimant's] impairment(s)," the ALJ must "consider [the claimant's] need for a structured setting and the degree of limitation in functioning [the claimant has] or would have outside the structured setting." 20 C.F.R. §416.924a(b)(5)(iv)(C). For example, "if [the claimant's] symptoms or signs are controlled or reduced in a structured setting," the ALJ must "consider . . . the amount of help [the claimant needs] from [his] parents, teachers, or others to function as well as [he does]; adjustments [made] to structure [the claimant's] environment; and how [the claimant] would function without the structured or supportive setting." 20 C.F.R. §416.924a(b)(5)(iv)(E).

Here, the ALJ failed to engage in this analysis with respect to M.C.'s abilities to, inter alia, acquire and use knowledge, relate and interact with others, and attend and complete tasks, despite acknowledging M.C.'s Individualized Education Plan ("I.E.P."), which provided him with daily resource room services, biweekly small group occupational therapy, and extra refocusing and redirection in the classroom, in addition to the regular medication management and biweekly therapy he received outside of school. (Dkt. #10 at 236-42). Instead, the ALJ's decision focused upon M.C.'s progress *with* all accommodations and support services in place.

The ALJ's failure to assess how M.C. would function without this degree of support is legal error, and merits remand. *See Lopez v. Commissioner*, 2020 U.S. Dist. LEXIS 139722 at *8 (W.D.N.Y. 2020)(remand required where ALJ made "no effort to determine whether [the claimant] can 'function independently, appropriately, and effectively in an age-appropriate manner outside of [his] highly structured setting'")(quoting *Bonet ex rel. T.V. v. Colvin*, 2015 U.S. Dist. LEXIS 19517 at *14 (W.D.N.Y. 2015)). *See also Borrero o/b/o J.L.Q. v. Saul*, U.S. Dist. LEXIS 85265 (W.D.N.Y. 2020)(same); *Appleberry o/b/o R.A. v. Commissioner*, U.S. Dist. LEXIS 173807 (W.D.N.Y. 2019)(same).

4

Nor can the ALJ's error be said to be harmless, as reassessment of M.C.'s limitations in these areas could potentially result in a finding of marked limitations in two of those functional domains, or an extreme limitation in one.[2] A questionnaire completed on March 31, 2017 by M.C.'s kindergarten teacher, Heather Carlson, identified "serious" or "very serious" problems in almost all areas of the domains of acquiring and using information, and attending and completing tasks. (Dkt. #10 at 228-34). Ms. Carlson also noted that, when not properly medicated, M.C. had "very serious" issues in all aspects of interacting and relating with others. *Id.* A questionnaire by M.C.'s kindergarten resource room teacher, Bridget B. Herod, similarly assessed "serious" problems in most areas of acquiring and using information, and attending and completing tasks. (Dkt. #10 at 218-19). State agency reviewer Jennifer Meyer opined, based on a review of M.C.'s kindergarten assessments, that M.C. had a "marked" limitation in the area of attending and completing tasks. (Dkt. #10 at 74-75). The ALJ assigned "some" value to the opinions of plaintiff's kindergarten teachers, and implicitly declined to credit Ms. Meyer's opinion.

Subsequent academic reports from M.C.'s first and second grade teachers noted that he was "making academic gains" and "has grown so much," but continued to reference M.C.'s struggles with "attention span and behaviors [that] have impacted his ability to flourish academically," (Dkt. #10 at 283-84). They attributed any improvements to the "modifications/differentiation [that were provided] when needed within the classroom …" (Dkt. #11 at 1601). M.C.'s first grade report card rated his cooperation with adults and peers consistently as, "needs improvement." (Dkt. #10 at 283-84).

---

[2] The Court observes that although the teacher questionnaires noting "serious" and "very serious" problems *could* be read to support a marked or extreme limitation, they do not, by themselves, compel such a finding. Courts have rejected the argument that a teacher's opinion that a child has "serious" or "very serious" limitations in a particular area necessarily translates into a "marked" or "extreme" limitation in a particular domain. See, e.g., *White o/b/o T.R.W. v. Berryhill*, 2019 U.S. Dist. LEXIS 50673 *12 n.3 (W.D.N.Y. 2019)(collecting cases).

The record also testified to a troubling pattern of changes to M.C.'s psychiatric medications and dosages, designed to combat a recurring problem with the "wearing off" of medications before the end of the school day. Reports by M.C.'s mother indicated that despite those adjustments, M.C. remained unable to sit still, maintain focus, control impulses, or follow rules, and suggested that outside of the supportive setting of school, his social behaviors, attention span, and lack of self-control, were significantly more problematic. (Dkt. #10 at 500-501, 512, 711, 744-45, 769).

In short, taken together, the evidence of record could, when reconsidered under the appropriate standards, result in a finding of disability. Because the ALJ failed to analyze the effect of M.C.'s structured and supportive setting on his ability to perform in the functional domains of acquiring and using information, attending and completing tasks, and interacting and relating with others, remand is required.

## CONCLUSION

For the foregoing reasons, I find that the ALJ's decision was not supported by substantial evidence, and was the product of legal error. The plaintiff's motion for judgment on the pleadings (Dkt. #12) is granted, the Commissioner's cross motion for judgment on the pleadings (Dkt. #13) is denied, and the matter is remanded for further proceedings consistent with this opinion. On remand, the ALJ is directed to reassess M.C.'s functioning, particularly with respect to the domains

of acquiring and using information, attending and completing tasks, and interacting and relating

with others, and to issue a new decision that applies the correct legal standards.

      IT IS SO ORDERED.

                _____
                     DAVID G. LARIMER
                 United States District Judge

Dated: Rochester, New York
       January 18, 2022.

7